George Stephen Dietz, the appellant, was indicted and convicted for escape in the first degree in violation of Alabama Code Section 13A-10-31 (1975). He was sentenced as an habitual offender to life imprisonment. Five issues are raised on appeal.
 I
Dietz contends that because his original arrest was not lawful he was not in "lawful custody" and therefore the State failed to present a prima facie case of escape and his motion for a judgment of acquittal was due to be granted.
In 1978, Dietz was convicted on two charges of burglary. He was given a ten-year sentence and ordered to serve the first twelve months in the custody of the Department of Mental Health and the balance on probation. This "sentence splitting" is authorized by Alabama Code Section 15-18-8 (1975). After serving the twelve months, Dietz was placed on probation.
On June 24th, 1980, Dietz was on probation when he was arrested by officers of the Hartselle Police Department for driving under the influence and for driving without a license. He was placed in the Hartselle City Jail.
The police department informed Dietz's probation officer, Warren McDonald, that Dietz had been arrested and charged with two misdemeanors. By telephone, McDonald placed a verbal "hold" on Dietz. On June 25, 1981, Dietz was transferred to the Morgan County Jail pursuant to arrangements made by McDonald. That same day, McDonald informed Dietz that he was under arrest for a violation of his probation: "I explained to him that we were holding him as a probation violator because he had violated the conditions of his probation." McDonald testified that he also told Dietz "why he was in jail."
When Dietz was transferred to the county jail, an "arrest and booking slip" was completed on him charging the offense of *Page 122 
probation violation. Although the booking slip indicates that Dietz was booked with a warrant issued by McDonald, it is undisputed that this was incorrect and that there was no warrant of arrest.
On July 9th, two weeks after Dietz's incarceration in the county jail, McDonald prepared a written report (Supervisor's Report on Delinquent Probationer) explaining that Dietz had been arrested and charged with two misdemeanors and transferred to the county jail where he was being held as a suspected probation violator. McDonald filed this report with the circuit judge's secretary for the judge to review.
Dietz escaped from jail on February 4, 1982, and was captured in September, approximately seven months later. In November, he was given a copy of the Supervisor's Report of Delinquency. His probation was revoked in December of 1982.
"It is an essential element of the crime of escape that the custody from which the prisoner escaped was lawful." 30A C.J.S.Escape, Section 5 (c)(2) (1965). By statute, the crime of escape involves the escape or attempt to escape "from custody". Alabama Code Section 13A-10-31 (1975). "Custody" is defined as a "restraint or detention by a public servant pursuant to a lawful arrest, conviction or order of court." Section 13A-10-30
(b)(1).
Dietz contends that his arrest was unlawful because neither McDonald nor the officers who physically transferred him to the county jail had a written statement by McDonald (the probation officer) stating that Dietz had violated the terms of his probation.
Alabama Code Section 15-22-54 (d) provides:
 "(A)ny probation officer, police officer or other officer with power of arrest, upon the request of the probation officer, may arrest a probationer without a warrant. In case of an arrest without a warrant, the arresting officer shall have a written statement by said probation officer setting forth that the probationer has, in his judgment, violated the conditions of probation, and said statement shall be sufficient warrant for the detention of said probationer in the county jail or other appropriate place of detention until such probationer shall be brought before the court. Such probation officer shall forthwith report such arrest and detention to the court and submit in writing a report showing in what manner the probationer has violated probation. Thereupon, the court, after a hearing, may revoke the probation or suspension of execution of sentence and shall proceed to deal with the case as if there had been no probation or suspension of execution of sentence."
This section specifically authorizes the warrantless arrest of probationers. The statute permits a warrantless arrest only if the person making the arrest has been authorized to do so by the probation officer. "An arrest without the proper authorization is usually invalid." N. Cohen J. Gobert, TheLaw of Probation And Parole, Section 11.08 at 542 (1983), citing State v. Call, 8 Ohio App.2d 277, 220 N.E.2d 130 (1965) (deputy sheriff arrested parolee for parole violation without having parole officer's arrest order). But see State v. Deener,64 Ohio St.2d 335, 414 N.E.2d 1055 (1980), cert. denied,450 U.S. 1044, 101 S.Ct. 1766, 67 L.Ed.2d 611 (1981) (police officer's arrest, without written arrest order, is valid as long as it satisfies fourth amendment).
However, Section 15-22-54 (d) does not, in our opinion, require the arresting officer, when arresting a probationer without a warrant, to have a written statement by the probation officer when the probation officer is the arresting officer. The purpose of the "written statement" by the probation officer is to ensure that there is sufficient certainty of a violation to make the arrest appropriate. Where the probation officer is the one actually making the arrest this certainty will be ensured and the written report unnecessary.
However, even if we consider Dietz's confinement "illegal" because McDonald did not have the "written statement" *Page 123 
of Section 15-22-54 (d), Dietz is not entitled to benefit from this irregularity. Even if Dietz's confinement was not technically lawful in all respects, we adopt the more realistic view in consideration of the dangers involved in escape, and follow that line of sound authority holding that, "where the imprisonment is under color of law, the prisoner is not entitled to resort to self-help but must apply for his release through regular legal channels, even though he might be able to show such defects in the procedure by which he was arrested, tried, sentenced, committed, or imprisoned as to justify or require his release on appeal or habeas corpus." Annot. 70 A.L.R.2d 1430, Section 4 (1960). "We think it is equally clear that even if a person, confined under color of law, is illegally confined because of violations of statutory procedures required with respect to his continued confinement, he is similarly not entitled to resort to self-help but must apply for his release through regular legal channels." Vucci v.State, 18 Md. App. 157, 305 A.2d 483, 484 (1973).
Dietz was already in lawful custody pursuant to a lawful arrest for traffic violations when he was transferred into the custody of the county at the direction of his probation officer. The fact that the sheriff did not have the probation officer's written statement is a matter of form rather than one of substance. See N. Cohen J. Gobert, supra, Section 11.08 at 543 n. 119. The sheriff had probable cause for taking custody of (arresting) Dietz because the probation officer had communicated the fact that Dietz was a probation violator in making the arrangements for Dietz's transfer from the city to the county jail. Dietz's confinement in the county jail was under "color of law." We find the following persuasive:
 "We believe that defendant's confinement by the Department of Corrections was `lawful custody' because he was being held under color of law and his custody had not been legally challenged. See State v. Johns, 339 So.2d 801 (La. 1976). Although he would have been able to show a defect in his custody through collateral attack, he had not applied for release from commitment through legal channels on that basis and his custody was facially legal.
 "The words `lawful custody' are described in the official revision comment to the escape statute, R.S. 14:110, in the following way:
 "`As long as the arrest and commitment are "legal" any attempt to escape is a crime, despite the guilt or innocence of the culprit. But if the warrant or arrest or commitment is void, the prisoner is not liable for escaping. However, an informality or irregularity in the process of commitment is not justification to escape.' (citations omitted)
 "Thus, an escape may be justifiable where the confinement is without color of authority in, for example, situations where a person has been confined either without any authority at all or where the judgment was void on its face. However, where a prisoner is properly in custody under an order not void on its face and is serving a sentence under color of law, he cannot, because his confinement is subject to collateral attack, take matters into his own hands by way of escape but must apply for relief through regular legal channels. See City of New Orleans v. Lyons, 342 So.2d 196 (La. 1977).
 "We agree with the California Supreme Court on this subject in which it was said:
 "`To allow prisoners to use force to escape and then to permit the defense that they were unlawfully confined, would create chaos in a prison. In a democracy the right of self-help is seldom permitted. Resort to the courts is the normal and traditional method of correcting an unlawful confinement.' In re Estrada, 63 Cal.2d 740, 48 Cal.Rptr. 172, 178, 408 P.2d 948, 954
(1965).
 "See also Henderson v. State of Kansas, 198 Kan. 655, 426 P.2d 92 (1967)." *Page 124 
State v. Perry, 364 So.2d 900, 901-02 (La. 1978).
See also Aderhold v. Soileau, 67 F.2d 259, 260 (5th Cir. 1933) ("A prisoner in a penal institution whose sentence is irregular or voidable may not for that reason, and before some court has so adjudged, defy his guards and run away. A difference of opinion might cause a death. Such a doctrine would set discipline at naught.").
Custody is not rendered unlawful because of the failure to comply with "statutory formalities".
 "Custody, however, is lawful where it is pursuant to a proper warrant or process. Moreover, custody is not rendered unlawful because the prisoner has been arrested and confined without a warrant, on suspicion of a felony, or because of failure to comply with statutory formalities in arresting him, or because of a mere informality in process, such as the failure of a warrant to state the county in which an offense was committed, or because of the absence of a commitment, or because the warrant, of the existence of which the prisoner has been informed, is not in the possession of the arresting officer, or because of a failure to file the information within the prescribed period after commitment." 30A C.J.S. Escape, Section 5 (c)(2) (1965) (footnotes omitted).
Here, Dietz did not escape from an arrest but was actually in the county jail pursuant to a prior conviction awaiting a hearing on his status as a probation violator. "Alabama law is clear that, to a limited degree, a party is justified in attempting to resist an unlawful arrest." Edwards v. State,452 So.2d 503 (Ala. 1983). Escape from an unlawful arrest must be distinguished from escape from a jail or prison "pursuant to a conviction or order of court" to the extent that defects in the detention in a penal or correctional institution (jail or prison) must be raised by appropriate legal means rather than by unauthorized departure. See Model Penal Code Escape, Section 242.6 at 269-70 (1980). Any other holding would result in chaos. "The reason for this rule is obvious — the difficulties of prison administration would be intolerable if each prisoner was permitted to `go over the wall' as a means of testing the legality of his incarceration, rather than utilizing the customary means of administrative and judicial redress."Commonwealth v. Stanley, 265 Pa. Super. 194, 401 A.2d 1166, 1171
(1979), affirmed, 498 Pa. 326, 446 A.2d 583 (1982).
For these reasons, we find that Dietz was in lawful custody at the time of his escape and that his motion for judgment of acquittal was properly denied.
 II
Dietz contends that the trial judge improperly charged the jury on the law of escape and erred in refusing to give five of his requested charges dealing with the lawfulness of custody.
The trial judge charged that Dietz "must have been convicted of a felony and must have been in custody pursuant to a felony conviction and must have escaped and left the custody without authority." Defense counsel objected because the trial judge did not, "in defining custody . . . tell them it has to be lawful custody." On this, the trial judge charged:
 "Now, the defendant from the witness stand and through his counsel makes no dispute that he escaped or left without any specific permission or release, so you are not concerned with that element, which is confessed.
 "The second one that he must have been in custody pursuant to the felony conviction of burglary in the first degree is contested, as I said, strongly. If the defendant was in the custody of the Morgan County Sheriff after being arrested by the probation officer or at his request and was being detained by the sheriff until the defendant could be brought before the Court to answer probation delinquency charges, then he was in custody pursuant to his conviction for burglary in the first degree, and it would be for you to say from the evidence offered whether or not the second aspect or element has been proved by the measure of proof." *Page 125 
During the course of the trial, the judge ruled that whether a written statement from the probation officer was required "calls for a conclusion of law", and was not for the jury's determination.
The rule on this issue was stated in United States v. McKim,509 F.2d 769, 774 (5th Cir. 1975):
 "To the extent the circumstances of the arrest raise questions of fact, these questions must be submitted to the jury; to the extent they raise questions of the legal significance of facts, as they often will in cases involving the Fourth Amendment and the exclusionary rule, they are questions for the trial court."
Under the circumstances and facts of this case, the "lawfulness" of Dietz's arrest and confinement presented questions of law for the trial judge. Those questions were resolved in part I of this opinion. Because of our conclusion that Dietz was in lawful custody, we find no error in the judge's refusal to give the requested instructions.
 III
Escape in the second degree is not always a lesser included offense of escape in the first degree. What was said in Murphyv. State, 399 So.2d 340, 346 (Ala.Crim.App.), cert. denied, Exparte Murphy, 399 So.2d 347 (Ala. 1981), applies here:
 "The evidence was undisputed and conclusive, as herein above indicated, that at the time of the escape defendant was in custody imposed pursuant to his previous conviction of a felony (two convictions in fact), which is an essential element of Section 13A-10-31 but not an element of Section 13A-10-32. Without attempting to decide the more ramified question whether the latter is a lesser included offense, of the former, defendant could not, under the undisputed evidence, have been guilty of a lesser offense without also having been guilty of the crime expressly charged. It follows that the court was not in error in ruling as it did on the subject."
 IV
Dietz argues that the trial judge erred in not allowing him to put on evidence of duress and in failing to charge the jury on that defense.
Before the trial started, the judge informed defense counsel that he would charge the jury on the principles of duress "in accord with the California authorities as they relate to escape."
 "THE COURT: If a party escapes from lawful custody, and the jury determine that he did that as a result of imminent possibility of losing his life at that particular moment, he is not — has not committed the offense of escape. Once, however, he is free from that duress, then his freedom is unlawful and unauthorized, and (if) he doesn't immediately surrender himself to the authorities, then the offense is committed."
During the trial the judge, in some instances, refused to allow defense counsel to pursue the issue of whether or not Dietz had been threatened while he was in jail. However, defense counsel was persistent and generally managed to get his evidence of duress before the jury. We view the trial judge's rulings as based on the order of proof rather than a more blanket ruling that Dietz could not prove duress as a defense or justification. Repeatedly, the trial judge ruled that, before defense counsel would be "entitled to show anything else relative" to duress, it would be necessary "to show that there was at the moment he left a present, imminent and impending danger and of such a nature as to induce a well-founded apprehension of death or serious bodily harm if he does not escape."
We find no error in the judge's refusal to give the requested charges. The general defense of duress is defined in Alabama Code Section 13A-3-30 (1975). However, within the context of an escape, the defense or justification of duress is more limited. The rule is clearly stated in J. Gobert N. Cohen, Rights ofPrisoners, Section 11.09 at 333-34 (1981): *Page 126 
 "There is now a growing trend to accept a limited justification defense. The leading case is People v. Lovercamp, (43 Cal.App.3d 823, 118 Cal.Rptr. 110
(1974)) where the court accepted the defense, but only under the following carefully circumscribed conditions. There had to be:
 "(1) a specific threat of death, forcible sexual attack, or substantial bodily injury in the immediate future;
 "(2) no time for complaint to the appropriate officials, or a history indicating that a complaint would prove futile;
 "(3) no time or opportunity to resort to the judiciary;
 "(4) no use of force or violence against prison personnel or other `innocent' persons; and
 "(5) the prisoner had to turn himself in to the proper authorities after attaining a position of safety in regard to the threatened harm."
(Footnotes omitted.)
A defendant is not entitled to a jury instruction on the defense of duress unless there has been a showing of a bona fide effort to surrender after the claimed duress had lost its coercive force. United States v. Bailey, 444 U.S. 394, 415,100 S.Ct. 624, 637, 62 L.Ed.2d 575 (1980).
 V
Dietz argues that his motion to require the State to elect between the two counts of the indictment or to strike one count of the indictment was due to be granted. Both counts charged escape in the first degree and were identical except that in count one the prior felony was burglary in the first degree and in the second count the prior felony was "Burglary, Grand Larceny, and Buying, Receiving, Concealing, or Aiding in Concealing Stolen Property." These two burglaries involved separate felony convictions and at trial the State proved that Dietz had pled guilty to the two prior offenses. After all the evidence had been presented, the trial judge required the State to elect, granting the motion which Dietz had filed prior to trial.
Dietz argues now, as he did then, that the allegation and proof of both convictions were totally unnecessary to support a conviction, especially in view of his admission of the prior convictions. He contends that proof of the two prior convictions prejudiced the jury and rendered his trial unfair.
"The rule is that the court will not compel an election unless it appears either from the indictment or the evidence that an attempt is made to convict the accused of two or more offenses growing out of separate and distinct transactions."Williams v. State, 383 So.2d 547, 557 (Ala.Cr.App. 1979), affirmed, Ex parte Williams, 383 So.2d 564 (Ala. 1980). Here, there is no contention or evidence that the State was attempting to convict Dietz of two or more separate offenses.
"The court, in cases of such joinder, should doubtless exercise great care, to protect the accused from embarrassment in his defense." Wooster v. State, 55 Ala. 217, 220-21 (1876). See also Brooms v. State, 197 Ala. 419, 73 So. 35 (1916). We recognize the potential for abuse and resulting prejudice to the accused by the practice of loading different counts of an indictment with numerous prior convictions where only one prior conviction is necessary to support the charged offense. However, this case simply does not rise to that level of abuse, if any be deemed present. We find no abuse by the trial judge in refusing to require the State to elect, before trial, under which count it would prosecute Dietz.
Dietz has been well-represented both at trial and appeal by able and exceptionally competent counsel. He has received a fair trial and we have found no error to reverse. Therefore, the judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur. *Page 127