Mark Mathis was indicted for escape in the first degree in violation of § 13A-10-31, Code of Alabama 1975. The jury found the appellant guilty of this offense and he was sentenced to life imprisonment in the penitentiary as a habitual felony offender.
Muriel Mims, the assistant director of records for the Alabama Department of Corrections, testified the appellant was in the Alabama Correctional System in July of 1981. At this time the appellant was assigned to the Decatur Work Release Program.
Evidence of four prior felony convictions was admitted into evidence.
Larry Burton, the director of the Decatur Work Release Program, testified the appellant was in the Decatur Work Release program during July of 1981. At the time this offense allegedly occurred, Burton was on vacation and Billy Waits was in charge of the program. Burton testified that he did not give the appellant permission to leave the Center while he was on vacation.
Billy Waits testified that he received a call from the work release center on July 18, 1981 concerning an escape. When he arrived at the center, he alerted local and other law enforcement authorities about the escape and ordered a formal head count to determine who was not there. After the head count was conducted, he directed his officers to look for the appellant. The appellant was not found in the center or on its grounds and had not been given permission to leave the center.
 I
The indictment in this case contained four counts. Each count charged the appellant with escape in the first degree. All four counts were identical except that each charged a different prior felony conviction.
Prior to trial, the court denied the appellant's motion to require the State to make an election between the counts.
After the presentation of all of the evidence and the closing arguments by both parties, the appellant again requested the trial court to require the State to make an election. This motion was made after the court began its oral charge to the jury.
The appellant now contends on appeal that the trial court erred by failing to require an election by the State. *Page 511 
An election is not necessary when the indictment charges only one offense and the several counts are merely variations of the same offense. 41 AmJur.2d, Indictments and Informations § 227.
 ". . . [B]ut the principle of election is applicable only when there is evidence of separate and distinct transactions. An election will not be enforced when the indictment is so framed as to be adapted to the different phases which the evidence may present of a single transaction." Black v. State, 83 Ala. 81, 3 So. 814, 815 (1888).
"The rule is that the court will not compel an election unless it appears either from the indictment or the evidence that an attempt is made to convict the accused of two or more offenses growing out of separate and distinct transactions."Dietz v. State, 474 So.2d 120, 126 (Ala.Crim.App. 1984), reversed on other grounds, Ex parte Dietz,474 So.2d 127 (Ala. 1985) (quoting Williams v. State,383 So.2d 547 (Ala.Crim.App. 1979), affirmed, Ex parteWilliams, 383 So.2d 564 (Ala. 1980). Here, as inDietz, supra, there is no contention or evidence that the State was attempting to convict the appellant of two or more separate offenses.
Nevertheless, the appellant contends he was prejudiced by the State's failure to make an election.
In Dietz, the indictment contained two counts charging Dietz with escape in the first degree. The two counts were identical except each charged a different prior felony.
In speaking for the court in that case, Judge Bowen stated that, "We recognize the potential for abuse and resulting prejudice to the accused by the practice of loading different counts of an indictment with numerous prior convictions where only one prior conviction is necessary to support the charged offense. However, this case simply does not rise to that level of abuse, if any be deemed present." Dietz, supra at 126.
In this case, there were four counts charging escape in the first degree and each count contained a different prior felony. While we agree that multiplicity of counts for one offense is to be discouraged, Toles v. State, 416 So.2d 768
(Ala.Crim.App. 1982), we are not prepared to apply a strict numerical test in determining when a defendant is prejudiced by multiple counts for one offense.
The decision whether to grant a motion requiring the State to elect between counts is within the sound discretion of the trial court. Ex parte State, 197 Ala. 419, 73 So. 35
(1916). Obviously, the trial court here determined the appellant was not prejudiced by the multiple counts when he denied the motion to compel an election. We cannot say that the trial court abused its discretion in this instance.
Thus, there is no basis of error to reversal here.
 II
The offense in this case allegedly occurred on July 18, 1981. The appellant was indicted initially for escape in the second degree on August 24, 1981. This indictment was dismissed without prejudice on December 9, 1982.
On December 13, 1982, the appellant was reindicted on the charge of escape in the first degree. The writ of arrest was served on the appellant on January 4, 1983. On January 18, 1983, the appellant filed a pro se motion requesting a final disposition of this indictment based upon the provisions of the Alabama Uniform Mandatory Disposition of Detainers Act. Apparently, said motion was never ruled on.
On August 12, 1983, the appellant filed a pro se motion to dismiss the indictment and withdraw the detainer based on his right to a speedy trial under the provisions of the Uniform Mandatory Disposition of Detainers Act. This motion was overruled on September 8, 1983 and the appellant filed a notice of appeal on September 26, 1983. On the same day the trial court struck the notice of appeal for lack of a final judgment. *Page 512 
On December 11, 1983, the appellant filed a writ of mandamus on this issue with this court. Said writ was denied on December 20, 1983.
On April 29, 1985, defense counsel for the appellant filed a motion to dismiss the indictment based on the provisions of the Uniform Mandatory Disposition of Detainers Act. This trial of this case began on June 26, 1985. On that day, defense counsel orally moved to dismiss the indictment based on the grounds that the appellant had been denied his right to a speedy trial. Said motion was denied by the trial court.
 A
The appellant contends the trial court erred in overruling his motion to dismiss the indictment for failure of the State to dispose of an untried indictment pursuant to the Alabama Uniform Mandatory Disposition of Detainers Act.
As appellant concedes in his brief, the provisions of this act relate exclusively to problems pertaining tointerstate extradition. Morning v. State,416 So.2d 780 (Ala.Crim.App. 1982); Terry v. State,461 So.2d 24 (Ala.Crim.App.), cert. denied, 461 So.2d 24 (Ala. 1984); McAlpin v. State, 397 So.2d 209
(Ala.Crim.App.), cert. denied, 397 So.2d 211 (Ala. 1981).
The appellant was an intrastate prisoner and, thus, the provisions of the Uniform Mandatory Disposition of Detainers Act are not applicable to this appellant.
 B
The appellant contends he was denied his right to a speedy trial. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182,33 L.Ed.2d 101 (1972), sets out the four factors which are to be considered in determining when an accused has been denied a speedy trial. The four factors are: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant.
"The length of delay must be 'presumptively prejudicial' in order to trigger an inquiry into the remaining Barker
factors." McCallum v. State, 407 So.2d 865
(Ala.Crim.App. 1981). The length of delay from the time the appellant was served with the writ of arrest until the date of his trial is almost two and one-half years. This period of time has been held to be long enough to be "presumptively prejudicial" and, thus, we shall review the other factors set out in Barker.McCallum, supra; Thompkins v. State,437 So.2d 634 (Ala.Crim.App. 1983).
During the hearing on the appellant's motion that the indictment be dismissed because he was denied a speedy trial, the trial court stated:
 "THE COURT: A warrant was not showed to have been executed. There is no notation on the docket sheet in that case that the warrant was ever executed. That was in 82-645. Dismissed on 12/9/82 by Judge Powell, and then on 12/13/82 the grand jury returned a new indictment charging the defendant with the present case in case number 83-485, which is what we are here for today. This case is on this trial docket and has been brought to trial in numerical order. There has been no priority assigned to this case. It has worked itself up for trial along with several other cases, all the cases on this two week trial docket except for the capital case which was set specially last Monday have come up in numerical order, as are all other cases that are tried in this Court unless they have a jail priority, which this case did not have. So your Motion for — I'll state also that the Defendant was up for arraignment for the first time along with all other cases during this time frame of indictment, was up for arraignment on April 3, 1985, and set on the trial docket for June, 85, which is about as fast as I can set cases with the number that I have pending in this division. Your motion is overruled. Anything further before we — it's fifteen to twelve?" (R. 27).
Thus, it appears that there was no deliberate or purposeful attempt by the State to delay prosecution of this case. The delay is simply attributable to the trial court's overcrowded trial docket. *Page 513 
The appellant did not properly assert his right to a speedy trial until the day of this trial. His motions pursuant to the Uniform Mandatory Disposition of Detainers Act did not properly present the speedy trial question to the trial court. Lucy v. State,443 So.2d 1335 (Ala.Crim.App. 1983), cert. denied, 443 So.2d 1335 (Ala. 1984); Tyree v. State, 439 So.2d 1346
(Ala.Crim.App.), cert denied, 439 So.2d 1346 (Ala. 1983).
The appellant asserts he was prejudiced by the delay because he could not be considered for parole, work release or trusty status while this case was pending against him. We do not find this sufficiently prejudicial to the appellant in this instance.
"The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, . . . and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." Thompkins, supra at 636 (quoting Byrd v. State, 421 So.2d 1344
(Ala.Crim.App. 1982)). The appellant was serving time in the correctional system on other criminal charges during the delay. This fact outweighs any prejudice suffered by the appellant due to the delay in bringing him to trial. We hold this appellant was not denied his right to a speedy trial as guaranteed by the Constitution of the United States.
The appellant's motion, made on the day of trial, to dismiss the indictment for this reason was properly denied.
 III
During the direct examination of Bill Waits, the following occurred:
 "Q. (By Mr. Matthews) Just tell us what happened to you, what you heard or saw.
 "A. Yes, sir. I was on call on that day. I was off duty. And I was called into the center —
 "MR. LOVELACE: Your Honor, I hate to interrupt Mr. Waits, and I hate to disrupt these proceedings, but I think we are getting into a real touchy area here, and I would appreciate it if the Court would further instruct Mr. Waits and I know he knows this, he's been in Court often, he can't testify about what anybody else told him.
 "MR. MATTHEWS: Your Honor, that's just not what the law is. The law of hearsay is he can't testify about things to prove that fact that it happened.
 "THE COURT: All right. When you testify about any conversations that you had, allow Mr. Lovelace a chance to make an objection, please, sir.
 "Q. (By Mr. Matthews) All right. You were called into the center; is that correct?
"A. Yes, sir.
 "Q. Did they tell you why they were calling you in?
 "MR. LOVELACE: Your Honor, we are going to object on grounds that that's hearsay. What anyone —
 "THE COURT: He can answer yes or no. Just answer that yes or no.
"THE WITNESS: What was that question again, sir?
 "Q. (By Mr. Matthews) Did they tell you why they were calling you in?
"A. Yes, sir.
 "Q. They gave you some information that something had occurred; is that correct?
"A. Yes, sir.
 "Q. And you didn't know before you got there whether it occurred or not; is that right?
"A. No, sir.
"Q. What was it they told you that occurred?
 "MR. LOVELACE: Your Honor, I am going to object at this time on the grounds of hearsay, that anything told him would be in violation of the prohibition against him testifying about what somebody else told him.
 "MR. MATTHEWS: Judge, that's just not hearsay. McElroy's Rules of Evidence, as I just laid the foundation before, is not hearsay unless it's offered for the purpose of proving the matter asserted. I just asked him. He didn't *Page 514 
know whether it was true or not when they told him. It's just to lay the foundation of why he went out there, your Honor, and to show the circumstances.
 "THE COURT: All right. Overruled. I will instruct the jury now that this is not offered for the proof of the fact of an escape. It is offered as proof of the fact that he was told this by someone from being called out there.
 "Q. (By Mr. Matthews) Why did they tell you they were calling you out there?
"A. That there had been an escape.
"Q. And did they tell you who had escaped.
"A. Yes, sir.
"Q. Who was that?
"A. That was inmate Mark Mathis —
 "MR. LOVELACE: Your Honor, we are going to object again on the same grounds, that the only purpose that the District Attorney is offering this into evidence is to prove the truth of the matter asserted, that he has not come under an exception that the evidence is not offered not for the truth of the matter asserted.
 "THE COURT: Well, what was the question? Who told him that? That was the last question that I heard.
 "MR. MATTHEWS: I asked him who did they tell him had escaped.
 "MR. LOVELACE: Well, and he is testifying about a matter that's the ultimate issue in this case.
"MR. MATTHEWS: I'll withdraw the question.
 "Q. (By Mr. Matthews) When they told you this, you didn't know whether it was true or not, did you?
 "A. No, sir. When I was at the house, I didn't know.
 "Q. Okay. They just told you some information over the telephone?
"A. Yes, sir.
"Q. That there had been an escape?
"A. Yes, sir.
 "Q. Did they tell you who they thought had escaped?
"A. Yes, sir.
"Q. Who was that?
 "MR. LOVELACE: Your Honor, I am going to object on the same grounds. This is the ultimate issue in the case and they are trying to offer for the proof of the truth of the matter asserted, and there is not an exception to that rule for what they are trying to get into evidence.
"THE COURT: All right. I'll sustain." (R. 57-60).
The appellant contends his hearsay objections as noted above should have been sustained by the trial court. Just prior to Waits' testimony concerning the call he received telling him that an escape had occurred at the Work Release Center, the State told the trial court this evidence was not being introduced to prove the fact that an escape had occurred but, rather, for the purpose of explaining why Waits went to the Work Release Center. The trial court gave instructions to the jury to this effect.
The hearsay rule is only applicable to a statement offered to prove the truth of the matter asserted. Tillis v.State, 469 So.2d 1367 (Ala.Crim.App.), cert. denied,469 So.2d 1367 (Ala. 1985). Waits' statement that he was told that an escape had taken place was not offered to prove the fact that an escape did, in fact, occur. Thus, the trial court properly overruled this objection.
The trial judge did, however, correctly sustain the appellant's hearsay objection as to whom Waits was told had escaped. Thus, there is no adverse ruling to the appellant and, therefore, nothing is presented for our review.
The fact that Waits, at one point, said he was told the appellant had escaped cannot, therefore, be considered as reversible error. The appellant's objection came after Waits' answer. Furthermore; the State, at that point, withdrew the question. Defense counsel never requested the trial judge to strike Waits' answer. Thus no error occurred here.
 IV
The appellant challenges the sufficiency of the evidence. *Page 515 
 "(a) A person commits the crime of escape in the first degree if:
". . .
 "(2) Having been convicted of a felony, he escapes or attempts to escape from custody imposed pursuant to that conviction."
Ala. Code, § 13A-10-31(a)(2) (1975).
Proof was presented by the State that the appellant had been convicted of a felony. There was testimony that on the day in question the appellant was in the correctional system and was assigned to the Work Release Program in Decatur, Alabama. On this day, a "head count" was conducted and a search for this appellant ensued. The appellant was not found in the center or on its grounds. He had not been given permission to leave the center.
Viewing these facts in the light most favorable to the prosecution, we find there was sufficient evidence from which the jury could conclude, by fair inference, that the appellant was guilty of the offense charged.
The judgment of the trial court is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.