Mark David Archer was indicted for robbery in the first degree, in violation of § 13A-8-41, Code of Alabama 1975. He was found "guilty as charged in the indictment" and was sentenced to life in prison without parole, as a habitual offender. He raises three issues on appeal. The relevant facts will be discussed as they arise below.
 I
The appellant contends that his judgment of conviction is void because the record does not affirmatively show that the oath was administered to the jurors. This argument has no merit. The supplemental record clearly shows that the jury venire was properly sworn.
 II
The appellant next contends that the trial court erred in denying his motion to dismiss the indictment for want of a speedy trial because 25 months had passed between his indictment and his trial. The record reveals that the appellant was arrested in late August 1987. He was apparently released on bond shortly after the arrest. He was indicted on December 3, 1987. In mid-August 1988, he was imprisoned for a conviction on a similar charge. A hold was placed on him for the Morgan County robbery charge. The appellant filed a motion for speedy trial on January 12, 1989. The motion was granted, with the following notation: "To be set in numerical order with other pending cases." (R. 366). A motion to dismiss for want of speedy trial was filed on January 12, 1990; that motion was denied prior to the appellant's trial, which began on January 24, 1990. *Page 599 
Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101
(1972) sets out the four factors which are considered in determining whether an accused has been denied a speedy trial. These factors are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right to a speedy trial and (4) prejudice to the defendant. Barker,407 U.S. at 530, 92 S.Ct. at 2191-92. See also Mathis v. State,501 So.2d 509, 512 (Ala.Crim.App. 1986). In order to trigger an examination of the latter three Barker factors, the length of the delay must be "presumptively prejudicial." Barker; Mathis
at 512. We find that, although the 25-month delay was excessive, the delay in and of itself is not sufficient to warrant a finding that the appellant was denied a speedy trial.See, e.g., Kimberly v. State, 501 So.2d 534
(Ala.Crim.App. 1986). Thus, we must examine the other Barker
factors.
The record reveals that during the hearing on the motion to dismiss, the trial judge stated that this was the first time the case had been set for trial and the case had been brought up in numerical order. Thus, it appears from the record that there was no purposeful or deliberate attempt on the part of the State to delay prosecution of the case and that the delay was attributable to a crowded court docket. See, e.g., Mathis.
"In order to assert that speedy trial was denied, the delay must be purposeful or oppressive." Noe v. State, 391 So.2d 151,152 (Ala.Crim.App. 1980). Neutral reasons which cause delay do not ordinarily require a dismissal of the case. See UnitedStates v. Castellana, 461 F. Supp. 233 (M.D.Fla. 1978). Neutral reasons may include crowded, congested court dockets. See,e.g., United States v. Canales, 573 F.2d 908 (5th Cir. 1978) (crowded court docket does not constitute a complete excuse but weighs slightly against defendant's argument); United States v.Rodriquez, 510 F.2d 1 (5th Cir. 1975). We find that the congested trial docket was a neutral reason for the delay and should not weigh heavily against the State.
The record also reveals that the appellant did not file his motion for speedy trial until January 12, 1989, which was over a year from the date of indictment. The fact that the appellant did not assert his right to a speedy trial sooner "tends to suggest that he either acquiesced in the delays or suffered only minimal prejudice prior to that date." Lewis v. State,469 So.2d 1291, 1294 (Ala.Crim.App. 1984), aff'd, Ex parte Blake,469 So.2d 1301 (Ala. 1985). This delay reduces the significance of the appellant's assertion. See, e.g., Arnett v. State,551 So.2d 1158 (Ala.Crim.App. 1989); Lewis; Harper v. State,420 So.2d 835 (Ala.Crim.App. 1982).
The appellant claims that he was prejudiced in several ways by the delay. These included the possibility of receiving early parole, the possibility of receiving concurrent sentences and the possibility that he could participate in a work release or S.I.R. program. We note that, although the appellant was present and testified at the hearing on his motion to suppress held immediately before the trial, he did not testify at the hearing on the motion to dismiss which was also held immediately before the trial. Thus, all of the appellant's allegations of prejudice appear only by motion. See Nichols v.State, 518 So.2d 851 (Ala.Crim.App. 1987); Smith v. State,364 So.2d 1 (Ala.Crim.App. 1978). We do not consider the appellant's allegations of prejudice to be substantial, in light of the fact that the appellant was sentenced to life in prison without the possibility of parole, as a habitual offender. Thus, the possibility of concurrent sentences, work release, or parole did not exist even if the appellant had been tried at an earlier date. Thus, we find that the appellant was not prejudiced by the delay. See generally, Kimberly. Although this is a close case, considering all of the Barker factors and other relevant circumstances, we find that the trial court did not err in denying the appellant's motion to dismiss the indictment.
 III
The appellant next contends that the trial court erred in denying his motion to suppress his statement, because, he says, he was under the influence of cocaine at the time of the statements and the police refused his request to have an attorney present when he made his statement. Thus, he argues that his statement was not voluntary. He *Page 600 
does not contend that he was not informed of hisMiranda rights.
At the hearing on the motion to suppress, the appellant testified that he was under the influence of cocaine when he gave his statement. He testified that shortly before he committed the robbery he had injected cocaine. He stated that when he signed his confession he was in the "fall-out" stage of the drug and could not comprehend what was happening. (R. 58.) He also testified that he asked for an attorney, but was told by the police that he could not talk to an attorney until he had talked to them. He also testified that the police asked him if he needed something to help him calm down. He stated that the police told him that they were going to charge him with every robbery case committed during the last two years if he did not talk to them. He also testified that the police threatened to arrest his wife.
Dawson Long, an investigator with the City of Decatur, who took the appellant's statement, testified that the appellant was read his Miranda rights at the scene of the robbery and again shortly thereafter at the police department. He testified that he spoke to the appellant immediately after the robbery and at the police department. He testified that the appellant acted in a normal manner and that the police and the appellant had no difficulty communicating with each other. He testified that they did not threaten to charge the appellant with any other robberies. He further testified that the appellant never mentioned wanting an attorney or calling an attorney.
Ed Taylor, who also was present when the appellant gave his statement, testified that the appellant never asked to speak to, or to call an attorney. He further testified that the appellant did not appear to be under the influence of alcohol or a controlled substance when he gave his statement. He testified that he noticed needle tracks on the appellant's arm and that shortly after his statement, he asked the appellant if he was "going to need something later." (R. 109.) He testified that anytime a person who has needle tracks is arrested that person may have a drug problem and could suffer from withdrawal. He further stated that when this condition might be present, the police would ask about the possibility of withdrawal in the event that the person needed to be taken to the hospital for Demerol or Valium.
Officer Keith Brown testified that he transported the appellant to the police department. He stated that the appellant never said anything about a lawyer.
"When the trial court has determined the voluntariness of the alleged confession, such holding is entitled to great weight on appeal and will not be disturbed unless it appears contrary to the great weight of evidence and manifestly wrong." Murphy v.State, 462 So.2d 761, 762 (Ala.Crim.App. 1984) (quoting Harrisv. State, 280 Ala. 468, 470-71, 195 So.2d 521 (1967)). See alsoCallahan v. State, 557 So.2d 1292 (Ala.Crim.App. 1989), aff'd,557 So.2d 1311 (Ala. 1989), cert. denied, 498 U.S. 881,111 S.Ct. 216, 112 L.Ed.2d 176 (1990); Hammins v. State,439 So.2d 809 (Ala.Crim.App. 1983). The trial judge need only be convinced by a preponderance of the evidence that the statement was voluntarily made. Callahan; Hammins. In deciding the voluntariness of a statement, the trial judge is entitled to consider the credibility of the defendant. Murphy. The simple fact that the defendant took drugs sometime prior to making a statement does not automatically render the statement involuntary. Murphy; Byrd v. State, 421 So.2d 1344
(Ala.Crim.App. 1982).
The appellant's testimony was directly contradicted by the police officers. There was sufficient evidence for the trial court to find that the statement was voluntary, See e.g.,Sandifer v. State, 535 So.2d 203 (Ala.Crim.App. 1987);Hutchinson v. State, 516 So.2d 889 (Ala.Crim.App. 1987).
For the reasons set forth above, the conviction is due to be, and hereby is, affirmed.
AFFIRMED.
All the Judges concur. *Page 601