The appellant, Rudolph Benefield, filed a Rule 32, Ala.R.Crim.P., petition, making numerous claims of ineffective assistance of counsel, as well as various other allegations which, he maintains, entitle him to relief. The trial court's order, denying the petition, addressed only a portion of the appellant's ineffective assistance claims and failed to address any of the other claims. Therefore, the State requests that this Court remand the cause to the trial court so that that court can address the appellant's claim regarding trial counsel's alleged failure to perfect an appeal. In light of the district attorney's response, acknowledging that he was unaware of the circumstances surrounding the appeal, the trial court should, if necessary, conduct an evidentiary hearing. Additionally, if any remaining claims are procedurally precluded from review, the trial court should so state for the record.
This cause is therefore remanded to the trial court so that the record can be expanded and clarified. Should the trial court deem it necessary to hold an evidentiary hearing addressing the claims, the trial court's return to remand shall include a transcript of the remand proceedings. The trial court should make due return to this court within 60 days from the date of this opinion.
REMANDED WITH INSTRUCTIONS.
All judges concur.
 On Return to Redmond
McMILLAN, Judge.
This case involves an appeal from a Rule 32, Ala.R.Crim.P., petition an out-of-time direct appeal.
The appellant, Rudolph Benefield, filed a Rule 32, Ala.R.Crim.P., petition, in which he raised numerous claims of ineffective assistance of counsel, as well as various other claims that, he maintains, entitle him to relief. On June 20, 1997, we remanded this cause to the trial court to address the appellant's claims, including his claims regarding ineffective assistance of trial counsel. Additionally, if any of the appellant's claims were procedurally precluded from review, the trial court was to so state for the record.
On remand, the trial court conducted a healing and subsequently granted the appellant's request for an out-of-time appeal and denied his Rule 32 petition. This Court has consolidated the out-of-time appeal and the appeal for the denial of the Rule 32 petition for purposes of this opinion.
 I. Direct Appeal Issues
A.
The appellant argues that the trial court erred in denying his motion for a judgment of acquittal made at the close of the State's case. Specifically, he alleges that "the only evidence against him was that one Larry Austin, who had admitted to between ten to twelve or twenty prior felony convictions and no motive was shown [sic]."
The evidence presented by the State tended to show the following. Larry Austin testified that on the evening of November 18, 1987, he and the victim, Jeff Lacy, were standing on a street corner in Birmingham when the appellant approached and started talking with them. While they were standing there, a friend named Moe drove up and gave each of them a Dilaudid, a narcotic, and then left. After Moe left, another friend named Pete, whose real name is Adam Ford, drove by, and Lacy flagged him for a ride. Austin testified that he and Lacy, along with *Page 289 
the appellant got into Pete's car. Lacy asked Pete to take him home. Pete agreed to do so but said that he first had to stop and take care of some other business. He testified that the three men waited in the vehicle for Pete to return. The appellant asked if anyone had any money and whether they wanted to buy some cocaine. Austin testified that Lacy said that he had a few dollars and that the conversation then "died down." The appellant then stated that he was going home and proceeded to get out of the vehicle. Austin testified that the appellant got out of the car, walked to the front bumper, turned around, pulled out a pistol and shot Lacy on the right side as he was sitting in the front passenger seat. He testified that the appellant was approximately two feet away from Lacy when he fired the shot. Lacy ran across the street and fell. Austin testified that the appellant, with gun in hand, followed Lacy across the street. He testified that he asked the appellant not to kill Lacy. The appellant then left in "Pete's" car.
The State also presented the testimony of Dr. Robert M. Brissie, who testified that he had performed an autopsy on the victim. Dr. Brissie testified that the victim had died as a result of a bullet that penetrated his aorta and that the cause of death was due to a loss of blood from the gunshot wound. He also testified that, based upon his observation of the condition of the victim's clothing, the gun was approximately three inches from the victim when it was fired.
Initially, we note that although testimony tending to show motive is always admissible, motive is not an element of the State's proof; therefore, the appellant's argument that the State was required to prove motive is without merit. See Bragg v.State, 518 So.2d 847 (Ala.Cr.App. 1987); McDonald v. State,241 Ala. 172, 1 So.2d 658 (1941). Additionally, the fact that the State's witness was a convicted felon did not render his testimony inadmissible but rather raised a question as to the weight to be accorded the evidence, which was ultimately decided by the jury. The weight and probative value to be given to evidence, including the credibility of the witnesses, and the inferences to be drawn from the evidence are within the sole province of the jury. Ex parte Smith, 698 So.2d 219 (Ala. 1997). Thus, the trial court was correct in denying the motion.
 B.
The appellant argues that the trial court erred in denying his motion for a mistrial based upon what he argues were prejudicial comments by the prosecutor during closing argument regarding the appellant's failure to testify. Additionally, the appellant argues, in the alternative, that he received ineffective assistance of counsel because counsel failed to timely object on this ground and thus failed to preserve the argument for his "out-of-time" appeal.
An examination of the record reveals that the closing arguments are not contained in the record. It is the duty of the appellant and his counsel on appeal to read the record and to ensure that an adequate record is filed. Magwood v. State, 689 So.2d 959
(Ala.Cr.App. 1996). Moreover, it is well-settled that "`[w]here the record is silent on appeal, it will be presumed that what ought to have been done was not only done, but rightly done.'"Spangler v. State, 711 So.2d 1125 (Ala.Cr.App. 1997), quotingOwens v. State, 597 So.2d 734, 736 (Ala.Cr.App. 1992). The record indicates, however, that the appellant's trial counsel objected to the prosecutor's closing argument and requested to be heard on it at the conclusion of the arguments. However, it was not until the jury had received its instructions and had retired for deliberations that defense counsel moved for a mistrial, stating that his "reading on the comments of the prosecutor was a comment on the defendant's failure to testify." The trial court responded that trial counsel's objection was untimely because the court had no opportunity to cure any error. The trial court then asked defense counsel what the prosecutor said, and counsel replied that the prosecutor "kept talking about the only evidence from the witness stand is what Mr. Austin says" and "[h]e said that on a number of occasions." The trial court then found that he did not think that that was "necessarily commenting on the defendant" and denied the motion for a mistrial. In order to prove prejudice in a claim of ineffective assistance *Page 290 
of counsel, the appellant must prove not only that his trial counsel rendered ineffective assistance but also that, but for the alleged errors, the result of his trial would have been different. See Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Although trial counsel failed to timely object to the allegedly improper remarks and was admonished by the court to enter a timely objection, the trial court discussed the claim and found it to be without merit. Because the appellant suffered no prejudice as a result of this untimely objection, his ineffective assistance argument must fail.
 II. Rule 32 Issues
A.
The appellant argues that the trial court erred in denying his Rule 32 petition in which he alleges that his trial counsel was ineffective because "counsel failed to object to an omission in the trial court's oral charge when it failed to include any instructions on how the jurors were to assess the credibility of the testimony of Larry Austin, the only State witness, [in view of] his prior felony convictions." Additionally, the appellant argues that trial counsel was ineffective for failing to request that the jury be charged "in substance, `that no inference of guilty [sic] could be derived from the fact that defendant was not sworn and testified in the trial' [pursuant to [Ala. Code 1975] § 12-21-220]."
A review of the record indicates that the trial court's oral charge to the jury substantially covered the subject matter that the appellant contends was omitted. Jordan v. City of Huntsville,667 So.2d 153 (Ala.Cr.App. 1995); Huff v. State, 596 So.2d 16
(Ala.Cr.App. 1991). Because no error occurred here, the appellant's ineffective assistance claims as to this issue are without merit.
 B.
The appellant argues that he was denied his constitutional right to a speedy trial. He argues that the delay of three years and six months between the time the trial court restored his case to the trial docket on September 5, 1991 and the time that his case was tried on March 20, 1995, was excessive. In support of his argument, he states that, even if the time period from September 21, 1991, to July 30, 1992 ("when apparent plea negotiations [were] in process") is excluded there was still a delay of "some two years and eight months before a trial [was] had."
In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101
(1972), the United States Supreme Court enunciated a four-pronged balancing test to be applied when a defendant alleges a speedy trial violation. Those factors are as follows: (1) the length of the delay; (2) the accused's assertion of his right; (3) the reason for the delay; and (4) the prejudice to the accused.
The length of delay in this case is measured from the time the trial court reset the case on the docket for trial on September 5, 1991, until the time of trial on March 5, 1995. Based upon our examination of the record, although the delay of three years and six months was excessive, the delay in and of itself is not sufficient to warrant a finding that the appellant was denied a speedy trial. See, e.g., Kimberly v. State, 501 So.2d 534
(Ala.Cr.App. 1986). It does, however, trigger an examination of the remaining factors.
The record reveals that the reasons for the delay included plea negotiations between the State and the appellant, which accounted for approximately one year and six months of the delay. The remaining period of delay was due to a congested trial docket as the result of which the appellant's case was continued approximately 10 times. The record indicates that the trial court engaged in an extensive colloquy with defense counsel regarding the number of cases on the trial docket. The record further indicates that the delays in this case were neither purposeful nor deliberate on the part of the State — subpoenas were issued and the appellant was ordered to be returned for trial on each of the 10 scheduled dates. See, e.g., Pierson v. State,677 So.2d 830 (Ala.Cr.App. 1996); Archer v. State, 643 So.2d 597
(Ala.Cr.App. 1991). The congested trial docket was a neutral reason for the delay and should not weigh heavily against the State. *Page 291 
Although the appellant's trial counsel, during trial, referred to a motion to dismiss for lack of a speedy trial filed by the appellant, the record does not contain a motion based on those grounds. The case action summary sheet does refer to a motion to dismiss filed by the appellant on October 12, 1994, which was approximately three years after the case was restored to the trial docket. "The fact that the appellant did not assert his right to a speedy trial sooner `tends to suggest that he either acquiesced in the delays or suffered only minimal prejudice prior to that date.'" Archer v. State, 643 So.2d at 599, quotingLewis v. State, 469 So.2d 1291, 1294 (Ala.Cr.App. 1984). This three-year delay in asserting his right reduces the significance of the appellant's assertion.
Lastly, the appellant has failed to show either in his brief on appeal or in his Rule 32 petition filed in the trial court, that he was prejudiced by the delay.
After considering all of the Barker factors and other relevant circumstances, we hold that the appellant has not been denied his right to a speedy trial.
 C.
The appellant argues that the trial court erred in denying his Rule 32 petition "based on the systematic exclusion of 19- to 22-year-old black persons and the failure of the trial court to discharge its duty under color of state law to require `failure to appear' summoned jurors to attend court." He further argues that error has "compounded by the failure of his trial counsel to [adequately] present said claim via a motion to quash the jury venire during the trial week of March 20, 1995."
 "[I]n Duren [v. Missouri, 439 U.S. 357, 364, 99 S. Ct. 644, 668-69, 58 L.Ed.2d 579 (1979)], the Court stated:
 "`In order to establish a prima facie violation of the fair cross-section requirement, the defendent must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process.'"
Ex parte Land, 678 So.2d 224, 244 (Ala. 1996).
A careful examination of the record reveals that the appellant failed to pass the three-pronged test enunciated in Land. Initially, we note that the appellant failed to prove that the group he alleges was excluded (i.e., black persons age 19 through 22) was a "distinctive group in the community." Although black persons are a "distinctive group" in evaluating a "fair cross-section" claim, age is not a factor in that determination. See May v. State, 710 So.2d 1362 (Ala.Cr.App. 1997).
Next, the appellant failed to prove that a "fair cross-section" violation occurred in the representation of black persons ages 19 to 22 in the jury venire and that the representation of that group on the jury venire was unreasonable in relation to the number of those persons in the community. Here, the evidence tended to show that according to the 1990 census, 31.9% of the population of Jefferson County age 19 and older was black. The record reveals that the venire summoned for the period of January 1, 1994, through March 20, 1995, which was the date of the appellant's trial, was 28.5% black. Such a variance in percentages is not sufficient to establish that blacks were not fairly represented on this jury venire. See Stewart v. State, [Ms. CR-90-415, September 26, 1997] — So.2d — (Ala.Cr.App. 1997). The record also reveals that there was a slightly higher percentage of blacks serving on the appellant's jury panel as 18 of 35 jurors (51%) summoned during the week of the appellant's trial were black. "The United States Constitution does not require an exact proportion between the percentage of blacks in the populations and those on the jury list. What is required is that no qualified person can be excluded from jury service." Stewart v. State. — So.2d at —
Last, the record reveals that the appellant failed to satisfy the third prong of the test because he failed to prove a systematic exclusion of blacks from the jury venire. Evidence was presented that in 1995 when *Page 292 
the appellant was tried, a computer selected the pool for both grand and petit juries and that the method of generating a juror pool was based on lists of county residents possessing driver's licenses. The appellant, however, presented no evidence of any practice that resulted in systematic exclusion of a distinct group; therefore, his argument must fail. Smith v. State,698 So.2d 189 (Ala.Cr.App. 1996); Guthrie v. State, 689 So.2d 935
(Ala.Cr.App. 1996).
The appellant's argument that the trial court was required to locate persons who failed to appear pursuant to their jury summons is also without merit. This claim was recently addressed and rejected by this Court in Wright v. State 709 So.2d 1318
(Ala.Cr.App. 1998). In Wright, this Court stated that the appellant "failed to prove that any action or inaction on the part of the State in summonsing potential jury members was part of a scheme designed to exclude blacks from jury service." 709 So.2d at 1319. Because this claim is without merit, the appellant's ineffective assistance claim based on the aforementioned argument is also meritless.
 D.
The appellant argues that the trial court erred in sentencing him as a habitual offender to life imprisonment without parole because, he argues, the State failed to properly prove that he had three prior felony convictions.
The record indicates that the State presented the certified copies of the records of three prior felony convictions of the appellant. Defense counsel objected to the admission of the certified copies, arguing that the names on the exhibits were different from the appellant's name. Specifically, counsel argues that the conviction reflected on State's exhibit 9 was not useable because the name on the certified copy was "Randolph Bennefield." Defense counsel objected to State's exhibit 10 because the name on the certified copy was "Ralph Charles Bennefield." Counsel then objected to State's exhibit 13 on the basis that it carried the name Henry C. Wells. The trial court acknowledged that it was aware of the discrepancies in the names shown on the certified copies and that all of the exhibits listed several aliases with slight variations of the appellant's name, including the certified copy bearing the name Henry C. Wells. This Court has held that "[t]he identity of names raises a prima facie presumption of the sameness of the person." Edwards v.State, 612 So.2d 1282 (Ala.Cr.App. 1992). Additionally, this Court has held that the various spellings of a defendant's name do not negate a finding of identity. See Summerford v. State,621 So.2d 1346 (Ala.Cr.App. 1993). The record further indicates that the State, out of an abundance of caution, produced fingerprint evidence that showed that the prints on the prior convictions matched the prints of the appellant. Moreover, when the State properly proves a defendant's prior convictions for enhancement purposes, and the defendant makes objection to that proof, the defendant bears the burden of going forward with evidence in support of his claim. See Dover v. State, 570 So.2d 784
(Ala.Cr.App. 1990). Here, the appellant failed to carry that burden.
Because the appellant failed to overcome the presumption that he was the same person mentioned in the prior convictions, the trial court properly used the appellant's prior convictions to enhance his sentence.
The judgment of the trial court is affirmed.
AFFIRMED.
All judges concur.