[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 779 
 Facts and Procedural History
Milton Anderson was convicted of receiving stolen property and was sentenced as an habitual offender under the Habitual Felony Offender Act to 20 years' imprisonment. On February 12, 2004, while incarcerated on the receiving-stolen-property conviction, Anderson was indicted for robbery and burglary. The case-action-summary sheet suggests that trial on the robbery and burglary charges was originally set for April 19, 2004, but it appears that Anderson's case was continued at least five times: on April 29, 2004, June 24, 2004, October 18, 2004, May 24, 2005, and March 28, 2006. It is clear from an order issued by the trial court that Anderson requested the March 28, 2006, continuance "from the Spring 2006 Criminal Term of Court and rescheduled for trial during the next term of Court." The case-action-summary sheet does not give the reasons for the other continuances, nor does it state whether Anderson or the State sought them.
On December 13, 2005, Anderson filed in the trial court a "[r]equest for final disposition of untried indictments, information or complaints and notice of place of inprisonment [sic]." On June 29, 2006, Anderson filed a motion to dismiss his case on the ground that he had been denied a speedy trial. Anderson subsequently petitioned the Court of Criminal Appeals for a writ of mandamus, arguing that the charges against him should be dismissed because, he argued, his right to a speedy trial had been violated. The Court of Criminal Appeals ordered Judge Howard Bryan to respond pursuant to Rule 21(b), Ala. R.App. P. Judge Bryan's order, issued on December 4, 2006, states:
 "Defendant . . . has filed a motion for speedy trial in regard to an indictment pending against him in Macon County. Defendant is currently incarcerated in the state penitentiary system. It would appear that defendant's case has been on the trial docket for the last terms of court but that for reasons that are not known to the court his case was not reached. However, defendant's case will be placed on the docket for the next term of court and shall receive priority for disposition."
The Court of Criminal Appeals dismissed Anderson's petition on December 13, 2006. Anderson now petitions this Court for the writ of mandamus directing Judge Bryan to dismiss the charges against him on the basis that his right to a speedy trial has been violated. We deny the petition. *Page 780 
 Standard of Review
"This Court's standard of review applicable to a petition for a writ of mandamus is well settled:
 "`"Mandamus is an extraordinary remedy and requires a showing that there is `(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.'"'"
Ex parte Medical Assurance Co., 862 So.2d 645, 649
(Ala. 2003) (quoting Ex parte Inverness Constr. Co.,775 So.2d 153, 156 (Ala. 2000)).
 Analysis
Anderson argues that he has been denied his right to a speedy trial under the Constitution of the United States and the Constitution of the State of Alabama. See Amend. VI, U.S. Const. ("In all criminal prosecutions, the accused shall enjoy the right to a speedy public trial. . . ."); Art. 1, § 6, Ala. Const. 1901 ("[T]he accused has a right to . . . a speedy, public trial."). Anderson contends that he is entitled to have this Court issue the writ of mandamus directing the trial court to dismiss the charges against him. In determining whether the trial court violated Anderson's right to a speedy trial, this Court must balance the four factors set out by the Supreme Court of the United States inBarker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182,33 L.Ed.2d 101 (1972): the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." (Footnote omitted.) "`A single factor is not necessarily determinative, because this is a "balancing test, in which the conduct of both the prosecution and the defense are weighed."'" Ex parte Walker, 928 So.2d 259
(Ala. 2005) (quoting Ex parte Clopton, 656 So.2d 1243,1245 (Ala. 1995), quoting in turn Barker,407 U.S. at 530, 92 S.Ct. 2182). However, in order to trigger an examination of the remaining Barker factors, the length of the delay must be "presumptively prejudicial."Doggett v. United States, 505 U.S. 647, 652,112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).
 1. Length of delay
"In Alabama, `[t]he length of delay is measured from the date of the indictment or the date of the issuance of an arrest warrant — whichever is earlier — to the date of the trial.'" Ex parte Walker, 928 So.2d at 264 (quotingRoberson v. State, 864 So.2d 379, 394 (Ala.Crim.App. 2002)). Anderson was indicted on the robbery and burglary charges on February 12, 2004.[1] His most recent trial setting was sometime after December 4, 2006, the date on which the trial court ordered that Anderson's case "be placed on the docket for the next term of court and shall receive priority for disposition." Thus, the length of delay was approximately three years. The State concedes, and we agree, that the length of delay is presumptively prejudicial under Alabama caselaw.See Mansel v. State, 716 So.2d 234, 236 (Ala.Crim.App. 1997) ("This court has previously found delays substantially less than the one the appellant complains of here [26 months] to be `presumptively prejudicial,' requiring an examination of the remaining Barker criteria.").
 2. Reason for the delay
"The State has the burden of justifying the delay." Exparte Walker, *Page 781 928 So.2d at 265. As noted earlier, it appears that Anderson's case has been continued at least five times. The last continuance, on March 28, 2006, was granted at Anderson's request. "`"Delays occasioned by the defendant or on his behalf are excluded from the length of the delay and are heavily counted against the defendant in applying the balancing test ofBarker."'" Ex parte Walker, 928 So.2d at 265
(quoting Zumbado v. State, 615 So.2d 1223, 1234
(Ala.Crim.App. 1993), quoting in turn McCallum v.State, 407 So.2d 865, 868 (Ala.Crim.App. 1981)). The record does not explain, however, why the other continuances were granted; nor does it state which party sought them. Because the State has failed to meet its burden of justifying the delay caused by the other continuances, we must conclude that the remaining delays of a little more than 25 months are attributable to the State's negligence, and we hold that the second Barker factor — the reason for the delay — weighs against the State.
 3. Anderson's assertion of his right
"Repeated requests for a speedy trial weigh heavily in favor of an accused." Kelley v. State, 568 So.2d 405, 410
(Ala.Crim.App. 1990). On the other hand, an accused's "delay [in filing a motion for a speedy trial] reduces the significance of the appellant's assertion." Archer v.State, 643 So.2d 597, 599 (Ala.Crim.App. 1991). In the present case, Anderson first requested a "final disposition of untried indictments, information or complaints" in Alabama on December 13, 2005, a year and 10 months after he was indicted. Then, on March 28, 2006, he asked that his trial date be continued. Shortly thereafter, on June 29, 2006, Anderson moved to dismiss the case specifically "for failure to provide a Speedy Trial."[2] Thus, Anderson waited nearly two years after his indictment to request a "final disposition"; he subsequently secured a further delay; and he then specifically asserted that the trial court had failed to provide him a speedy trial. Anderson's delay in asserting his right to a speedy trial and his own effort to delay the trial weighs against his claim. Archer v. State, 643 So.2d at 599
("[T]he appellant did not file his motion for speedy trial until . . . over a year from the date of indictment. The fact that the appellant did not assert his right to a speedy trial sooner `tends to suggest that he either acquiesced in the delays or suffered only minimal prejudice prior to that date.'" (quoting Lewis v. State, 469 So.2d 1291, 1294
(Ala.Crim.App. 1989))).
 4. Prejudice to Anderson
In analyzing the fourth factor, we consider the "interests of defendants which the speedy trial right was designed to protect. . . .: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Barker v. Wingo, 407 U.S. at 532,92 S.Ct. 2182. In the present case, Anderson alleges that he "is currently suffering from extremely oppressive incarceration" because he "has been repeatedly denied work release, honor camps or lesser *Page 782 
security level transfer, institutional jobs and educational programs that require custody." Anderson was already incarcerated when he was indicted on the current charges. Thus, Anderson has not suffered "extremely oppressive incarceration" "apart from the obvious detriments suffered by any defendant incarcerated prior to trial." Beaver v. State,455 So.2d 253, 255 (Ala.Crim.App. 1984). See also Kimberly v.State, 501 So.2d 534, 537 (Ala.Crim.App. 1986) ("[V]ague allegations that the defendant had been deprived of `many Federal benefits' and programs and that the delay had affected his good time" are "too vague to substantiate any claim of prejudice.").
Anderson also alleges that his defense has been impaired as a result of the delay. In his petition for the writ of mandamus, he states that he "has lost potential witnesses to Death and Relocation, thereby rendering Anderson unable to present his alibi defense as planned." In his response brief, Anderson elaborates on the prejudice he has suffered from the delay, stating that
 "he has lost one potential witness [Danial Pollard] to death whose testimony would have proved that [he] and Pollard [were] together all morning and all afternoon but departed in the early evening, not seeing each other for the remainder of the night, corroborating Anderson's statement given to the arresting Officer on the night he was arrested. This lost testimony would have been sufficient to refute the state witness that testified at Anderson's preliminary hearing on September 8, 2003 that Anderson and Pollard [were] together around 11 or 12:O'Clock on the night of the offense and to raise a reasonable doubt in the jurors' minds as to Anderson's innocence."
Anderson further states that he has "lost four potential witnesses to relocation."
In the parts of the record submitted as exhibits to his petition, Anderson has made only bare allegations that his defense has been impaired because "one potential witness is now deceased (Danial Pollard), and four (4) other potential witnesses have re-located and due to defendant's incarceration, the new locations are unknown." The materials contain "no subpoenas for [these] witnesses] for the first trial date," nor any explanation as to what their testimony would have been.See Bishop v. State, 656 So.2d 398, 403
(Ala.Crim.App. 1994). Thus, in determining whether Anderson has been prejudiced by the alleged loss of witnesses caused by the delay, we have only Anderson's assertion in his response brief that the "lost testimony would have been sufficient to refute the state witness that testified at Anderson's preliminary hearing on September 8, 2003 that Anderson and Pollard [were] together around 11 or 12 O'Clock on the night of the offense and to raise a reasonable doubt in the jurors' minds as to Anderson's innocence." However, we are unable to verify whether the lack of such testimony in fact prejudices Anderson based on the materials before us, and "[t]his Court is bound by the record and cannot consider statements in brief not supported by the record." Mauldin v. Mount Hebron United MethodistChurch, 289 Ala. 493, 495, 268 So.2d 770, 772 (1972).
We are also unable to determine whether the testimony that could have been provided by Danial Pollard and the other missing witnesses was truly material or would have been merely cumulative. See Howard v. State, 678 So.2d 302, 304
(Ala.Crim.App. 1996) ("Because, however, the appellant presented other alibi witnesses at trial, the testimony of the deceased witness would have been cumulative. . . . *Page 783 
[W]e conclude that the appellant's right to a speedy trial was not violated."). Thus, Anderson has not demonstrated that he has been prejudiced by the delay.
 "The United States Supreme Court in Doggett [v. United States, 505 U.S. 647 (1992),] used three hypothetical cases to demonstrate the accused's burden under the fourth Barker factor. The accused's burden `of proof in each situation varies inversely with the [State]'s degree of culpability for the delay.' In the first scenario, where the state pursues the accused `with reasonable diligence,' the delay — however long — generally is excused unless the accused demonstrates `specific prejudice to his defense.' Thus, when the state acts with reasonable diligence in bringing the defendant to trial, the defendant has the burden of proving prejudice caused by the delay.
 "The second situation recognized in Doggett
involves bad-faith efforts by the state to delay the defendant's trial. For example, intentional delay by the state in order `to gain some impermissible advantage at trial' weighs heavily against the state, and a bad-faith delay the length of the delay in Doggett likely will `present an overwhelming case for dismissal.' Obviously, the burden on the accused to establish prejudice in this scenario would be minimal at most, and depending on how heavily the other Barker factors weigh against the state, the fourth factor's inquiry into prejudice could be rendered irrelevant. . . .
 "The third scenario recognized in Doggett
involves delay caused by the state's `official negligence.' Official negligence `occupies the middle ground' between bad-faith delay and diligent prosecution. In evaluating and weighing negligent delay, the court must `determine what portion of the delay is attributable to the [state]'s negligence and whether this negligent delay is of such a duration that prejudice to the defendant should be presumed. The weight assigned to negligent delay `increases as the length of the delay increases.' Negligent delay may be so lengthy — or the first three Barker factors may weigh so heavily in the accused's favor — that the accused becomes entitled to a finding of presumed prejudice. When prejudice is presumed, the burden shifts to the state, which must then affirmatively show either that the delay is `extenuated, as by the defendant's acquiescence,' or `that the delay left [the defendant's] ability to defend himself unimpaired.'"
Walker, 928 So.2d at 267-68.
Anderson's case falls within the third Doggett
scenario. We do not find the State's negligent delay of approximately 25 months to be so severe as to relieve Anderson of any responsibility to demonstrate at least some actual, as opposed to conjectural, prejudice. Moreover, Anderson's own conduct in waiting 22 of those 25 months before first asserting his right to a speedy trial, and then seeking a continuance, suggests, absent some contrary explanation, that Anderson did not consider the delay to be prejudicial.
In order for this Court to issue the writ of mandamus, Anderson must show "(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." Ex parte Alfab, Inc.,586 So.2d 889, 891 (Ala. 1991). Anderson has failed to do so. Moreover, we note that, although Anderson's trial has been further delayed by the filing of this petition, the trial court has specifically ordered that his case "be placed on the docket for the next term of *Page 784 
court and shall receive priority for disposition."
 Conclusion
Because Anderson has failed to establish that he has a clear legal right to the relief he seeks, we deny the petition.
PETITION DENIED.
WOODALL, SMITH, BOLIN, and PARKER, JJ., concur.
COBB, C.J., recuses herself.
[1] The actual indictment is dated February 12, 2004; however, the case-action-summary sheet states that the date of the indictment was February 5, 2004.
[2] In his "Inmate request for final disposition of untried indictments, information or complaints and notice of place of inprisonment [sic]," Anderson states that he "has previously filed a Motion for Fast and Speedy Trial." However, Anderson has the burden of supplying this Court with a copy of that motion. Rule 21(a), Ala. R.App. P. ("Application for a writ of mandamus . . . shall contain . . . [c]opies of any order or opinion or parts of the record that would be essential to an understanding of the matters set forth in the petition."). Because he has failed to file a copy of that motion, it is not properly before this Court, and we do not consider it.