Rel: November 17, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

_____

### SC-2023-0146
_____

**Ex parte State of Alabama**

**PETITION FOR WRIT OF CERTIORARI TO THE COURT OF CRIMINAL APPEALS**

**(In re: Nathaniel Dennis**

**v.**

**State of Alabama)**

**(Houston Circuit Court: CC-12-163;
Court of Criminal Appeals: CR-18-1211)**

MITCHELL, Justice.

This case stems from a cold-case murder that took place decades ago. On a Saturday night in 1981, an armed robber broke into a gas station where Russell Earnest Douglas was working, shot him several times, robbed the station, and fled. Douglas's murderer eluded capture for decades. Then, some 30 years later, forensic scientists retested DNA evidence found at the crime scene and turned up a match to the respondent here, Nathaniel Dennis, who was serving a 600-year sentence in Virginia for an unrelated crime. In 2011, a Houston County grand jury indicted Dennis for the murder of Douglas, and he was transferred to Alabama to stand trial. In 2019, after a series of pretrial delays, Dennis was convicted of murder made capital because it was committed during a burglary.

Dennis appealed, arguing that the delay between his indictment and trial violated his right to a speedy trial. The Court of Criminal Appeals agreed, holding that the over-eight-year period between 2011 and 2019 required the trial court to "presume" that the delay prejudiced Dennis's liberty interests -- even though Dennis had not put forward any affirmative evidence of prejudice and likely could not have done so

2

because he was already serving a 600-year sentence in Virginia. <u>Dennis v. State</u>, [CR-18-1211, July 8, 2022] ___ So. 3d ___ (Ala. Crim. App. 2022).

That was error. As this Court and the United States Supreme Court have made clear, the speedy-trial inquiry turns on how much delay has been caused by <u>the government</u>, not the bare amount of time between the indictment and trial. In this case, the portion of the delay caused by government negligence falls well short of the amount needed to justify a presumption of prejudice. Absent that presumption, Dennis's speedy-trial claim fails. We therefore reverse the judgment below and remand for consideration of the other arguments that Dennis raised in his appeal.

<u>Facts and Procedural History</u>

Russell Earnest Douglas was brutally murdered on September 26, 1981, while he was working a late shift as a gas-station clerk in Dothan. The assailant shot Douglas several times, ransacked and robbed the station, and fled. Douglas -- who was still alive, though only barely, when police arrived -- told officers that his assailant had been a black male wearing a stocking cap. Douglas was then transported to a nearby hospital, where he eventually died. Meanwhile, the officers located a stocking cap at the scene of the crime, which they determined belonged

3

to Douglas's assailant.  The cap had a few strands of black hair embedded in the fabric, but initial attempts to test that hair for DNA were fruitless, with forensic analysts concluding that the sample was insufficient to produce useful results.

Many years later, between 2010 and 2011, forensic scientists reexamined the strands of hair using updated technology and were able to extract a viable DNA profile from two of the hairs.  The DNA on each hair turned up a match to Nathaniel Dennis, who was then serving a 600-year sentence in Virginia for a similar crime -- this time involving the burglary of a newspaper facility -- in which the premises of the facility had also been ransacked and during which the victim had also been robbed and shot multiple times.  See Dennis v. Commonwealth, No. 1285-98-1, Oct. 19, 1999 (Va. Ct. App. 1999) (not reported in South Eastern Reporter).

After considering the newly discovered DNA evidence, a grand jury indicted Dennis for Douglas's murder on May 4, 2011.  The governors of Virginia and Alabama then reached an agreement to transfer Dennis to this State so that he could stand trial in Houston County.  Owing to a series of delays, however, Dennis's trial did not begin until June 2019 --

4

over eight years after his indictment. Near the onset of trial, Dennis moved to dismiss the case against him based on speedy-trial grounds, but the trial court denied that motion. The case proceeded to trial, and, on June 17, 2019, a jury found Dennis guilty of murder made capital because it was committed during a burglary. The trial court sentenced Dennis to life in prison without the possibility of parole.

Dennis appealed, arguing that: (1) the delay between his indictment and trial violated his Sixth Amendment right to a speedy trial; (2) the trial court improperly allowed the admission of an evidence label and certain forms that, he says, contained inadmissible hearsay; (3) Douglas's last words were improperly admitted into evidence as a dying declaration; (4) Douglas's death certificate was improperly admitted into evidence; and (5) the trial court erred in denying Dennis's motion for a judgment of acquittal.

The Court of Criminal Appeals accepted Dennis's first argument and, on that basis, reversed the judgment of the trial court, vacated Dennis's conviction and sentence, and dismissed Dennis's indictment with prejudice. <u>Dennis</u>, ___ So. 3d at ___. The court did not address Dennis's four alternative arguments.

The opinion setting forth the court's judgment was joined in full by only one judge, with the other four judges concurring in the result only. The judges who concurred in the result did not write separately on original submission, but two of them did sign a special concurrence on application for rehearing to explain the reason for their votes on original submission. See Dennis, ___ So. 3d at ___ (McCool, J., concurring specially on denial of rehearing, joined by Minor, J.). As discussed below, that special concurrence makes clear that certain dispositive aspects of the reasoning of the opinion on original submission below were joined by a majority of the court.

The opinion began by explaining that the test from Barker v. Wingo, 407 U.S. 514 (1972), governs any inquiry into whether a defendant's speedy-trial rights have been violated. That test, the opinion explained, "'considers the following factors: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his or her right to a speedy trial; and (4) the prejudice to the defendant.'" ___ So. 3d at ___ (quoting State v. Pylant, 214 So. 3d 392, 394-95 (Ala. Crim. App. 2016)). The first factor operates both as part of the overall balancing test and as a threshold inquiry: unless there is a significant delay, then

6

"'there is no necessity for inquiry into the other factors.'" Ex parte Walker, 928 So. 2d 259, 264 n.6 (Ala. 2005) (quoting Barker, 407 U.S. at 530).

The opinion below determined -- and the State does not dispute at this stage -- that all of the first three factors, including the threshold factor, favor Dennis to at least some degree. First, the opinion concluded that the length of the delay exceeded Barker's one-year threshold. ___ So. 3d at ___.

Second, the opinion concluded that the reason for at least part of that delay was the State's negligence, and negligence is weighed against the State -- though much less so than strategic or deliberate delay. In reaching this conclusion, the opinion broke down the entire time frame from Dennis's indictment to his trial into eight discrete periods and then analyzed whether each period could be attributed to the State:

> "The delay in this case can be divided into eight different time frames, each with different reasons for the delay:
>
> > "(1) From May 4, 2011, when Dennis was indicted, until January 25, 2012, when he was transferred from prison in Virginia to Houston County to face the capital-murder charge. … [T]he record on appeal does not

7

reflect why it took nine months to return Dennis from Virginia ….

"(2) From January 25, 2012, until August 20, 2013, when Dennis filed his first motion for a speedy trial and requested a trial date. During this time, one judge recused himself from the case and the second judge set motion deadlines and ordered at least one status conference in the case. This 17-month period involved ordinary procedural occurrences in a case of this nature and this delay was justified or, at worst, negligent.

"(3) From August 20, 2013, until September 16, 2015, when this case was originally set for a suppression hearing. …

"… [T]his period was partially justified, but a majority of this two-year delay should be regarded as negligent delay due to the trial court's failure to set the [suppression] hearing within a reasonable time after the motion contesting the admissibility of DNA evidence was filed.

"(4) From September 16, 2015, until November 2, 2015, when the DNA suppression hearing was eventually held. This seven-week delay was caused by the [prosecutors'] failure to meet the trial court's deadline for producing certain documents …. [T]his delay weighs against the State as a negligent delay.

"(5) From November 2, 2015, until February 5, 2016. This period was the time given to both parties to file briefs in support of their position on the DNA suppression issue. Although this was a reasonable time to allow

8

Dennis and the [prosecutors] to file the necessary arguments, the due date was well over two years after the suppression motion had been filed. Again, this delay weighs against the State ....

"(6) From February 5, 2016, until April 18, 2016. Both parties were ordered to turn in briefs by February 5, 2016. Dennis complied with the trial court's order, but the [prosecutors] failed to file a brief as ordered. ... This 10-week delay was clearly negligent delay by the State ....

"(7) From April 18, 2016, until the first trial setting on June 11, 2018. Neither the [prosecutors] nor Dennis contributed to this delay. ... At least one year of this delay, in particular after the trial court denied Dennis's motion to suppress on March 13, 2017, was attributable to the trial court and weighs against the State, but not as heavily as the delays caused by the [prosecutors'] action or lack of preparedness.

"(8) From June 11, 2018, until the case went to trial on June 10, 2019. ... [T]he [prosecutors] filed a motion to continue to allow the [prosecutors] to do additional DNA testing. ... Although the [prosecutors] asserted that the new DNA tests could result in exculpatory evidence for Dennis, it is also clear that the [prosecutors] could have obtained a tactical advantage if the tests had further implicated Dennis. ... [T]his final delay was not a bad-faith delay, but the [prosecutors were] exceedingly negligent in failing to have the tests performed years earlier. Although this final delay weighs heavily against the State,

9

> it is mitigated by the [prosecutors'] offer, which was accepted by Dennis, to depose any witnesses that Dennis requested while the additional DNA testing was being conducted. …"

___ So. 3d at ___-___.

In sum, the opinion classified roughly four and a half years (four years, seven months, and about three and a half weeks) -- a little over half of the eight-year-and-two-month total delay -- as attributable to some form of official negligence. Accordingly, the opinion found that, overall, the cause-for-delay factor weighed in Dennis's favor. Id. at ___.

Third, the opinion concluded that Dennis had acted with reasonable diligence in asserting his speedy-trial right, so that this factor also favored him. ___ So. 3d at ___.

The opinion then turned to the final and most important Barker factor: prejudice to the defendant. It noted that Dennis had put forward "no evidence" of "actual prejudice" and likely could not have done so given that: (1) Dennis had "acknowledge[d] that he would have been in prison in Virginia if he had not been in custody in Alabama" during the "entire eight years pending trial," ___ So. 3d at ___, and (2) there was no suggestion that any witnesses had died or that any evidence had gone

10

stale during the delay between indictment and trial (as opposed to the much longer period between the commission of the crime and the indictment), id. at ____.

But even though Dennis had failed to establish any evidence of actual prejudice, the opinion concluded that he was nonetheless entitled to a presumption of prejudice under the United States Supreme Court's holding in Doggett v. United States, 505 U.S. 647 (1992). Doggett, as the opinion below explained, sets out an elaborate multifactor balancing test that specifies whether and how "prejudice [should] be presumed in circumstances when the delay is excessive." ___ So. 3d at ____.

> "'"The United States Supreme Court in Doggett [v. United States, 505 U.S. 647 (1992),] used three hypothetical cases to demonstrate the accused's burden under the fourth Barker factor. The accused's burden 'of proof in each situation varies inversely with the [State]'s degree of culpability for the delay.' In the first scenario, where the state pursues the accused 'with reasonable diligence,' the delay -- however long -- generally is excused unless the accused demonstrates 'specific prejudice to his defense.' Thus, when the state acts with reasonable diligence in bringing the defendant to trial, the defendant has the burden of proving prejudice caused by the delay.
>
> "'"The second situation recognized in Doggett involves bad-faith efforts by the state to delay the defendant's trial. …'
>
> "'"The third scenario recognized in Doggett involves delay caused by the state's 'official negligence.' Official

negligence 'occupies the middle ground' between bad-faith delay and diligent prosecution. In evaluating and weighing negligent delay, the court must 'determine what portion of the delay is attributable to the [State]'s negligence and whether this negligent delay is of such a duration that prejudice to the defendant should be presumed.' The weight assigned to negligent delay 'increases as the length of the delay increases.' Negligent delay may be so lengthy -- or the first three <u>Barker</u> factors may weigh so heavily in the accused's favor -- that the accused becomes entitled to a finding of presumed prejudice. When prejudice is presumed, the burden shifts to the state, which must then affirmatively show either that the delay is 'extenuated, as by the defendant's acquiescence,' or 'that the delay left [the defendant's] ability to defend himself unimpaired.'"'"

___ So. 3d at ____ (citations omitted).

The opinion found that "Dennis's case falls under the third <u>Doggett</u> category of negligent delay" because "Dennis does not allege bad-faith efforts by the State to gain an unfair advantage based upon the delay." ___ So. 3d at ____. The opinion then reasoned that the trial court was required to presume that the delay in this case prejudiced Dennis because the delay between his indictment and trial, like the delay in <u>Doggett</u> itself, "was over eight years" in total length. ___ So. 3d at ____. Based on this finding of presumed prejudice, the Court of Criminal

12

Appeals reversed the judgment of the trial court and rendered judgment for Dennis. The State sought rehearing, which the court denied.

In denying the State's rehearing application, two judges submitted a separate special concurrence to "explain [their] reasons for concurring in the result on original submission." They noted their frustration with the decision to grant Dennis relief, emphasizing: (1) the "complete lack of proof of any actual prejudice" to Dennis; (2) the "conclusive nature of the DNA evidence" against him; and (3) the "'fact that [Dennis] has suffered none of the harms that the [speedy-trial] right was designed to prevent.'" ___ So. 3d at ____ (McCool, J., concurring specially on denial of rehearing, joined by Minor, J. (quoting Doggett, 505 U.S. at 659)). Nonetheless, they believed that they were compelled to overturn the trial court's judgment because, in their view, "United States Supreme Court precedent requires that prejudice should be presumed" in Dennis's case because, as in Doggett, the "delay was [approximately] eight and a half years" long. Id. at ____.

Following the denial of rehearing, the State filed a petition for a writ of certiorari, asking this Court to consider whether "[t]he decision below conflicts with prior decisions of this Court and the U.S. Supreme

Court because it presumed prejudice based on the entire post-indictment period rather than the period of delay caused by the State's negligence." Petition at 6. We ordered an answer and briefs.

## Standard of Review

Because the question presented to this Court "involves only issues of law and the application of the law to the undisputed facts," our "review is de novo." Walker, 928 So. 2d at 262.

## Analysis

The decision below rests on a straightforward legal error. In its application of the second Barker factor (cause for delay), the Court of Criminal Appeals attributed only about four and a half years of the post-indictment delay to official negligence; yet in assessing the fourth Barker factor (prejudice), it based its presumption of prejudice on the eight-year-plus period of total delay. That reasoning conflicts with decisions from the United States Supreme Court and this Court, both of which have specified that prejudice should be presumed based only on those periods of delay that are attributable to the government. Since delay of less than five years is insufficient to support a presumption of prejudice in the absence of any aggravating factors, as this Court and courts across the

country have consistently held, Dennis is not entitled to such a presumption. And without that presumption, his speedy-trial claim fails, as the trial court correctly determined.

A. The Court of Criminal Appeals erred by presuming prejudice based on the entire post-indictment period, rather than only the portion of that period attributable to the State's negligence.

While the reasoning below was fractured -- with the main opinion on original submission joined by only a single judge -- a majority of the court agreed on one key point: the United States Supreme Court's precedent in Doggett compelled the court to grant Dennis relief because, the majority reasoned, the "delay in Doggett, like the delay in Dennis's case, was over eight years from the time of [the] indictment," and the Court in Doggett found a delay of the same length sufficient to presume prejudice. ___ So. 3d at ___; see also id. at ____ ("In this case, the delay of over eight years was excessive."); id. at ____ (McCool, J., concurring specially on denial of rehearing) (describing the relevant delay as an "eight-year" period); id. at ____ (McCool, J., concurring specially on denial of rehearing) (stating that the Doggett Court determined that prejudice

was presumed because the "delay [in that case] was eight and a half years").

That was error. Both <u>Doggett</u> itself and this Court's post-<u>Doggett</u> precedents have made clear that prejudice cannot be presumed based on the entire post-indictment period as such but, rather, only on whatever subset of that period was caused by government misfeasance. See <u>Doggett</u>, 505 U.S. at 657-58 (explaining that the Court's presumption of prejudice was based on the "6 years" long delay "attributable to the Government's negligence," rather than on the "8½ years" long lag "between … indictment and arrest"); <u>Ex parte Anderson</u>, 979 So. 2d 777, 780, 783 (Ala. 2007) (noting that the total delay period was "three years," but explaining that only "25 months" of that period were attributable to the State's negligence, and finding that "the State's negligent delay of approximately 25 months" was not "so severe as to relieve Anderson of any responsibility to demonstrate at least some actual, as opposed to conjectural, prejudice").

The law on this point is so well established that Dennis does not even attempt to dispute it in his response brief. Instead, his arguments before this Court take a different tack. Despite asserting below, at the

16

rehearing stage, that the opinion below had "appropriately categorized" each period of delay, see Dennis's brief in opposition to application for rehearing at 5, Dennis now argues that the opinion erred by attributing only four and a half years of the delay to official negligence. Instead, he argues, the opinion should have categorized every period not provably caused by Dennis as negligent delay.

The State contends that Dennis is estopped from taking this position after having successfully relied on the opposite position below. See Russell v. Russell, 404 So. 2d 662, 665 (Ala. 1981) ("The law is settled in Alabama that a party who has, with knowledge of the facts, assumed a particular position in a judicial proceeding is estopped from assuming a position inconsistent to the first one to the prejudice of an adverse party."). But even if Dennis were not barred from advancing this argument, it would fail.

A finding of "negligent delay" requires a finding of negligence. That is true both in the obvious definitional sense and under controlling precedent. Doggett itself emphasized that "pretrial delay is often both inevitable and wholly justifiable" because the "government may need time to collect witnesses against the accused, oppose his pretrial motions,

17

or, if he goes into hiding, track him down." 505 U.S. at 656. In keeping with that understanding, Doggett held that delays are deemed justified so long as the State acts with "reasonable diligence" in bringing the defendant to trial. Id.; accord Walker, 928 So. 2d at 267 ("[W]here the state pursues the accused 'with reasonable diligence,' the delay -- however long -- generally is excused unless the accused demonstrates 'specific prejudice to his defense.'" (quoting Doggett, 505 U.S. at 656)).

Dennis asks us to resist this straightforward conclusion. According to Dennis, the Supreme Court held in Barker that even "'neutral reason[s]'" for delay count as governmental "negligence" in the speedy-trial context, so long as the delay was not provably caused by the defendant. Dennis's brief at 17 (quoting Barker, 407 U.S. at 531).

But Dennis's argument on this point reflects a fundamental misreading of Barker. Here is the relevant language from Barker, in its full context:

> "Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such

18

circumstances must rest with the government rather than with the defendant. <u>Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay</u>."

407 U.S. at 531 (footnote omitted; emphasis added).

As that context makes clear, <u>Barker</u> held that both overt prosecutorial negligence (such as authorities simply losing track of the case for the better part of a decade, as happened in <u>Doggett</u>) and other "<u>more</u> neutral" forms of State mismanagement, such as "overcrowded courts," can be considered against the government. 407 U.S. at 531 (emphasis added). The Court put overcrowding in the "government's fault" bucket because overcrowding is generally caused by the failure of state actors to take reasonable steps to ensure that trial courts have manageable dockets. So while court overcrowding might be "more" neutral than overt prosecutorial misfeasance, it is not entirely neutral and therefore weighs (lightly) against the State. In contrast, administrative pretrial delays that do not reflect <u>any</u> negligence -- such as the time necessary to locate a "missing witness" or to handle an unusually "complex" charge -- are not counted against the State at all, even though such delays are also not caused by the defendant. 407 U.S. at 531.

19

In keeping with these principles, appellate courts across the country have held that a delay does not trigger a presumption of prejudice unless the reasons for that delay reflect government negligence or other misconduct. See, e.g., United States v. Small, No. 22-1469, July 7 (3d Cir. 2023) (not reported in Federal Reporter) (emphasizing that "a neutral reason" for delay "weighs against neither party" under Barker); United States v. Keith, 61 F.4th 839, 853 (10th Cir. 2023) (explaining that "a truly neutral justification" does "not favor[] either side" in the Barker analysis and "cannot fairly be attributed to the government"); United States v. Snyder, 71 F.4th 555, 577-78 (7th Cir. 2023) (similar); Vlahos v. State, 518 P.3d 1057, 1072 (Wy. 2022) (similar); In re Timothy C., 376 Md. 414, 433, 829 A.2d 1024, 1034 (2003) (emphasizing the long-standing rule that "'"a neutral reason"'" for delay is "'"chargeable to neither party"'" (citations omitted)).[1]

_____

[1]It is no coincidence that many of these cases involve delays caused by the COVID-19 virus. These cases provide an especially salient example of the way in which courts conduct the Barker analysis in the face of truly neutral delays.

Under Dennis's theory, all COVID-related delays should count against the government, because none of those delays were caused by the defendant. But virtually every court that has considered that question has reached the opposite conclusion. See, e.g., United States v. Small,

Dennis does not even acknowledge these cases in his briefing. Instead, he contends that we are required to presume prejudice because,

_____

No. 22-1469, July 7, 2023 (3d Cir. 2023) (not reported in Federal Reporter); <u>United States v. Keith</u>, 61 F.4th 839, 853 (10th Cir. 2023); <u>United States v. Snyder</u>, 71 F.4th 555, 577-78 (7th Cir. 2023); <u>United States v. Marquez</u>, No. 21-30134, Nov. 10, 2022 (9th Cir. 2022) (not reported in Federal Reporter) (classifying COVID-related delays as "valid" under <u>Barker</u>, and therefore as weighing in favor of the State); <u>State v. Adams</u>, 364 Ga. App. 864, 868, 876 S.E.2d 719, 725 (2022) (refusing to weigh COVID-related suspensions of jury trials against either party); <u>State v. Paige</u>, 977 N.W.2d 829, 838 (Minn. 2022) ("[T]rial delays due to the statewide orders issued in response to the COVID-19 global pandemic do not weigh against the State."); <u>State v. Brown</u>, 310 Neb. 224, 237-41, 964 N.W.2d 682, 691-93 (2021) (holding that COVID-related delays count as "valid" delays under <u>Barker</u>); <u>Ali v. Commonwealth</u>, 75 Va. App. 16, 43, 872 S.E.2d 662, 675 (2022) (holding that pandemic-related delays fall within the third <u>Doggett</u> category of "'valid' reasons for delay that are not directly attributable to the government"); <u>United States v. Campbell</u>, No. 1:19-cr-25, Apr. 20, 2021 (S.D. Ohio 2021) (not reported in Federal Supplement) (holding that "the COVID-19 pandemic, and the court system's efforts to minimize the public health impacts of that pandemic," constitute "valid reasons" for delay and therefore "'weigh in favor of the government'" (citation omitted)).

The only decision we know of that has reasoned differently is the Supreme Court of Vermont's opinion in <u>State v. Labrecque</u>, [No. 22-AP-314, July 7, 2023] ___ A.3d ___ (2023), which found that COVID-related delays are technically "attributable to the State" under <u>Barker</u> but should be accorded "very little weight" in light of their non-negligent character. <u>Id.</u> at ___. Accordingly, the court held that such delays are insufficient to support a presumption of prejudice. <u>Id.</u> at ___. Thus, despite taking a different analytical approach, the Supreme Court of Vermont seems to ultimately agree with its sister courts' conclusion that non-negligent delays do not, by themselves, justify a presumption of prejudice.

he says, our own precedent in <u>Anderson</u> "held that only '[d]elays occasioned by the defendant or on his behalf are excluded from the length of delay,'" Dennis's brief at 23 (quoting 979 So. 2d at 781), and that our earlier precedent in <u>Walker</u> similarly held that "[j]ustified delay is likewise limited to 'delay for which the defendant is primarily responsible,'" Dennis's brief at 22 (quoting 928 So. 2d at 265).

Once again, Dennis mischaracterizes the cases on which he relies. In <u>Anderson</u>, this Court repeated the familiar principle that "[d]elays occasioned by the defendant or on his behalf are excluded from the length of delay," 979 So. 2d at 781, but we never held that those delays are the <u>only</u> types of delays that are excluded. By inserting the word "only" ahead of the quoted sentence, Dennis transforms a sufficient condition for exclusion into a necessary one and -- in doing so -- distorts the meaning of the passage.

He repeats that mischaracterization when describing our holding in <u>Walker</u>. <u>Walker</u> explained that justified delay "<u>includes</u> such occurrences as missing witnesses <u>or</u> delay for which the defendant is primarily responsible," 928 So. 2d at 265 (emphases added), but never held that justified delay is "limited" to the latter situation. In fact,

22

<u>Walker</u> made clear that the opposite is true when it <u>expressly</u> listed another example of justified delay.

As <u>Anderson</u> and <u>Walker</u> illustrate, this Court has never held that prejudice must be presumed based on reasonable, non-negligent delays. Instead, we have long recognized, in keeping with United States Supreme Court precedent, that delays do not count against the State so long as the "'the state pursue[d] the accused "with reasonable diligence"'" during the relevant time frame. <u>Anderson</u>, 979 So. 2d at 783 (quoting <u>Walker</u>, 928 So.2d at 267, quoting in turn <u>Doggett</u>, 505 U.S. at 656).

The upshot here is that "negligent delay" is just what it sounds like: delay caused by negligence. Turning back to the findings recited in the opinion below, the only periods attributable to governmental negligence were:

- an unspecified "partial[]" portion of the 2-year-and-27-day period between August 20, 2013, when Dennis filed his first speedy-trial motion, and September 16, 2015, when the court scheduled a pretrial hearing -- which we, in the interests of being maximally charitable to Dennis, treat as the full 2 years and 27 days for purposes of resolving this issue;

- 1 month and 17 days given to the State to produce documents for the DNA suppression hearing;

23

- 3 months and 3 days given to both parties to brief the DNA suppression issue;[2]

- 2 months and 13 days of extra time granted to the State to file a brief;

- 1 year of the period from April 18, 2016, to June 11, 2018, for various motions and rulings; and

- 1 year of time for additional DNA testing by the State.

___ So. 3d at ____-____.

When added together, these periods come to a little over four and a half years of arguably negligent delay. The remaining portion of the eight years and two months between Dennis's indictment and trial was, as the opinion below found, attributable to a variety of non-negligent factors,

---

[2]While it does not affect the result in this case or our analysis below, we note for the sake of clarity -- and in the interest of avoiding future confusion -- that the opinion below mistakenly double-counted this period. Specifically, the opinion acknowledged that this roughly three-month period "was a reasonable time to allow Dennis and the State to file the necessary arguments," but nonetheless went on to weigh that delay against the State because the due date for the briefs was almost two years after Dennis had initially filed his motion to suppress. ___ So. 3d at ____. The problem with that approach is that the opinion had already counted that same two-year delay against the State when it concluded that much of that delay was attributable to "the trial court's failure to set the hearing within a reasonable time." Id. at ____. Since everyone agrees that this period represented a reasonable amount of time to brief the suppression issue, only the delay preceding the briefing -- not the reasonable amount of time for the briefing itself -- can count against the State.

such as the time necessary to arrange and complete Dennis's transfer from Virginia to Alabama[3] and an array of other routine and reasonable "procedural occurrences," including the recusal of one judge, the retirement of another, and the handling of dozens of motions, briefs, and objections, many if not most of which were filed by Dennis. ___ So. 3d at ____. As the opinion below recognized, these delays represented either the "ordinary" workings of reasonably diligent courts, ___ So. 3d at ___, or else were affirmatively occasioned by Dennis or on his behalf, id. at ____. In short, even under a calculation that is charitable to Dennis, the total portion of delay caused by government negligence is less than five years.

The five-year figure is significant because courts across the country, including this one, have consistently found negligent delays insufficient to relieve a defendant of his burden to demonstrate actual prejudice

---

[3]Dennis's unsupported assertion that the time necessary to complete this transfer should be attributed to the government is perplexing. Nothing in the record suggests that Dennis's transfer took an unusual or unreasonable amount of time relative to transfers for comparably dangerous prisoners. And the reason that this transfer had to take place at all lies with Dennis himself: had he not brutally attacked a man during an armed burglary in Virginia, he would not have been incarcerated in that jurisdiction and could have come to Alabama immediately to stand trial.

unless the "delay is five years or more."[4] <u>Walker</u>, 928 So. 2d at 270

(collecting numerous federal cases); <u>see also</u> 5 Wayne R. LaFave et al.,

<u>Criminal Procedure</u> § 18.2(e) (4th ed.) (also collecting cases) ("[C]ourts

'generally have found presumed prejudice only in cases in which the post-

indictment delay lasted at least five years,' except where the government

was responsible for the delay by virtue of something beyond simple

negligence." (footnotes and citations omitted)).  Dennis does not challenge

this body of caselaw, and we see no reason to reach a contrary result here.

If anything, a presumption of prejudice based on a period less than 5

years would be especially inappropriate in this case, given that Dennis

was already serving a 600-year sentence for an unrelated crime and has

not put forward an even superficially plausible theory as to how the delay

---

[4]<u>Walker</u> makes clear that, in some cases, the length of negligent delay required to presume prejudice may be "more" than five years.  928 So. 2d at 270.  That is particularly likely to be the case when "other circumstances" -- such as the defendant's incarceration for a different crime during the relevant period -- make such a presumption especially unreasonable.  <u>Barker</u>, 407 U.S. at 533.  But since the negligent delay in this case is well under five years, we need not address how much additional delay might be required to justify a presumption of prejudice in such circumstances.

between his indictment and trial could have prejudiced either his liberty interests or his ability to marshal a defense.[5]

B. Without a presumption of prejudice, Dennis's speedy-trial claim fails.

The absence of prejudice, either actual or presumed, is fatal to Dennis's speedy-trial claim. As the State points out -- and as Dennis does not refute -- it appears that no post-Doggett opinion from the United States Supreme Court, this Court, or the Court of Criminal Appeals has granted relief based on a speedy-trial claim without finding prejudice. Instead, courts have consistently denied speedy-trial claims absent either

---

[5]The closest Dennis has come to putting forward such a theory is when he asserted below that four of the people he "'would have called in his defense passed away before he faced trial.'" ___ So. 3d at ____ (citation omitted). But Dennis alleged only that these people passed away between the night of the murder and his trial; he never alleged (as he would have needed to do to show prejudice) that they passed away between the indictment and trial, see id. at ___. That omission is compounded by another, equally significant deficiency, which is that "Dennis did not make any proffer to establish how the four individuals in question could have assisted his defense if the case had gone to trial earlier and if they had been able to testify." Id. at ___. On top of all that, "the conclusive nature of the DNA evidence" placing Dennis at the crime scene, in contradiction of his core defense claim -- which was "that he was not at the crime scene" at all -- makes it difficult to imagine how anything these individuals might have said could have swayed a reasonable jury. ___ So. 3d at ____ (McCool, J., concurring specially on denial of rehearing).

actual or presumed prejudice, even when the other factors weighed in the defendant's favor.  See Walker, 928 So. 2d at 267, 277; see also State's brief at 47-48 (collecting dozens of similar cases from the Court of Criminal Appeals).

There is good reason for that consensus.  Courts place immense weight on the prejudice factor because that is the factor that most directly reflects the "core concern" of the Speedy Trial Clause: "impairment of liberty."  United States v. Loud Hawk, 474 U.S. 302, 312 (1986).  And while Barker's ad hoc balancing test leaves open the possibility that there could be circumstances in which the first three factors weigh so overwhelmingly in favor of the accused that prejudice becomes unnecessary, those circumstances are extraordinarily rare -- as evidenced by the dearth of decisions granting relief in the absence of either actual or presumed prejudice.

In any event, no such extraordinary circumstances are present here.  Even on the accounting of the opinion below, only a slight majority of the total eight-year delay can be attributed to the State, and none of that delay was attributable to anything more than simple negligence. We have never required a trial court to vacate a conviction in similar

circumstances, and Dennis offers us no reason to chart a new course now. His speedy-trial claim fails.

## Conclusion

The court below erred by presuming prejudice based on the entire period between Dennis's indictment and trial, rather than on the more limited period attributable to government negligence. And because the period attributable to government negligence is too short to presume prejudice -- and because Dennis has not put forward any evidence of actual prejudice -- his speedy-trial claim fails. We therefore reverse the judgment below and remand the case to the Court of Criminal Appeals for it to address the remaining arguments raised in Dennis's initial appellate brief.

REVERSED AND REMANDED.

Parker, C.J., and Shaw, Wise, Bryan, Stewart, and Cook, JJ., concur.

Sellers, J., concurs in the result.

Mendheim, J., recuses himself.